**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **CHRISTOPHER BOLTON,** | ) | **CIV-F-08-0218 AWI GSA** |
| **Plaintiff**, | ) | |
| | ) | **ORDER RE: CROSS MOTIONS** |
| **v.** | ) | **FOR SUMMARY** |
| | ) | **JUDGMENT/ADJUDICATION** |
| **PENTAGROUP FINANCIAL** | ) | |
| **SERVICES, LLC and DOES 1 through 20,** | ) | |
| **inclusive,** | ) | |
| | ) | |
| **Defendants**. | ) | |
| _____ | ) | |

**I. History**

Plaintiff Christopher Bolton borrowed money from Triad Financial to purchase a car. He defaulted on the loan and the car was repossessed in 2003. Triad Financial contracted with Defendant Pentagroup Financial Services, LLC to collect the debt. In the intervening years, Plaintiff joined the military. Defendant did not contact Plaintiff until early November 2007. Ms. Selepack, an employee of Defendant, left Plaintiff a voice mail message on his cell phone. Plaintiff called back later that same day and spoke with Ms. Selepack and her supervisor, Ms. Hedgeman. In the conversation, Ms. Hedgeman suggested that she would contact Plaintiff's commanding officer about the debt. Ms. Selepack then left a second voice mail message on Defendant's cell phone at a later date, in which she also raised to prospect of contacting Plaintiff's commanding officer.

Plaintiff filed suit against Defendant on February 12, 2008. He alleges violations of the Fair Debt Collection Practices Act ("FDCPA") and requests statutory and mental distress damages. Defendant made a settlement offer of $2002 plus reasonable attorneys' fees and costs, which Plaintiff rejected. The parties have now filed cross motions. Plaintiff seeks summary adjudication as to Defendant's liability under FDCPA, asserting that the undisputed facts show a clear violation. Defendant seeks full summary judgment on a number of rationales. First, Defendant says the court lacks subject matter jurisdiction as its settlement offer exceeded the statutory maximum Plaintiff is entitled to, rendering the case moot. Second, Defendant asserts the undisputed facts show there is no FDCPA violation. Third, Defendant seeks summary adjudication on the unavailability of emotional distress damages. Defendant also makes evidentiary objections to the materials Plaintiff has submitted. The court took the matter under submission without oral argument.

## II. Legal Standards

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir. 2002). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. See James River Ins. Co. v. Schenk, P.C., 519 F.3d 917, 925 (9th Cir. 2008). If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Juell v. Forest Pharms., Inc., 456 F.Supp.2d 1141, 1149 (E.D. Cal. 2006); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007); Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002). Further, a "motion for summary judgment may not be defeated ...by evidence that is 'merely colorable' or

'is not significantly probative.'" <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); <u>Hardage v. CBS Broad. Inc.</u>, 427 F.3d 1177, 1183 (9th Cir. 2006). Additionally, the court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references. See <u>Southern Cal. Gas Co. v. City of Santa Ana</u>, 336 F.3d 885, 889 (9th Cir. 2003). If the non-moving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. See <u>Nissan Fire & Marine Ins. Co. v. Fritz Companies</u>, 210 F.3d 1099, 1103 (9th Cir. 2000).

### III. Statement of Undisputed Material Facts

**A. Plaintiff's Statement of Undisputed Material Facts**

1. Plaintiff defaulted on a credit agreement with Triad Financial.

2. The account was placed with Defendant debt collector for collection.

3. Defendant's debt collection activities included telephone calls and voice mail messages to the Plaintiff.

4. Defendant first contacted Plaintiff by leaving a message on his personal cell phone.

5. Defendant's agent Joyce Selepack left a message stating she was from Pentagroup Fraud and Recovery Services and that Plaintiff needed to call her back immediately.

6. In a voice mail message, on or around November 3, 2007, Defendant's agent Joyce Selepack threatened to contact Plaintiff's Commanding Officer.

      Disputed. Plaintiff in his deposition testified that the message included a statement that Pentagroup might have to contact his commanding officer in order to find 'a better way to

**4**

1 contact me.'

2

3 7. This phone message was recorded and preserved by the Plaintiff.

4

5 8. Defendant does not deny the existence, validity, or authenticity of the recording.

6       Disputed on the grounds that the evidence does not support the purported fact. Moreover,

7 Plaintiff has not provided the court with the recording.

8

9 9. Plaintiff is an E-4 (AM-3) in the United States Navy stationed at Naval Air Station Lemoore,

10 California.

11

12 10. Defendant admits it employed Joy Selepack at the time of the call.

13

14 11. Defendant's phone records document the making of the call.

15

16 12. Defendant's internal documents indicate Joyce Selepack acknowledges that she left this

17 message for Plaintiff.

18

19 13. Defendant admits the telephone message was not compliant with its own rules, restrictions,

20 and regulations which are intended to comply with the FDCPA.

21       Disputed. Defendant's rules and regulations are intended to do more than comply with the

22 FDCPA. The statement is misleading because defendant's own internal regulations are more

23 strict than FDCPA.

24

25 14. Defendant disciplined Joy Selepack for this call to Plaintiff.

26       Undisputed, but defendant notes that his fact should not come into evidence as it is a

27 subsequent remedial measure.

28

15. Plaintiff contacted the Defendant in response to this message attempting to stop Defendant from contacting his Commanding Officer and spoke with Ms. Selepack and her supervisor, Mary Hedgeman.

16. The supervisor, Ms. Hedgeman, then stated her intention to send a package to Plaintiff's Commanding Officer.

17. Defendant's threats to contact Plaintiff's Commanding Officer resulted in Plaintiff experiencing fear and anxiety.

Disputed. The instate fact is not supported by the evidence. In fact, the term "threat" is an unreasonable inference drawn from the evidence, and is argumentative.

18. Defendant's threat to contact a Commanding Officer is referred to as a "Captains Mast" in the Navy.

Disputed on the grounds that this is contrary to the evidence. There is no evidence presented by Plaintiff that the defendant threatened Plaintiff with a Captain's Mast. In fact, the deposition testimony provided by Plaintiff establishes the opposite. Defendant's agents never used the term Captain's Mast. Moreover, Plaintiff did not state that the defendant referenced article 15 of the UCMJ. There is no evidence that such a threat was ever made. Plaintiff's argument is speculation and conjecture without any foundation.

19. A Captain's Mast can quickly change the direction of an individual service member's career, if not end the career.

Undisputed but irrelevant. There was no Captain's Mast nor a threat of a Captain's Mast.

20. Article § 15 of the Uniform Code of Military Justice (hereinafter "UCMJ") authorizes Commanding Officers to use non-judicial punishment to punish and control discipline problems of junior enlisted service members.

Undisputed but irrelevant.

21. Plaintiff was very scared regarding the outcome of Defendants contacting his Commanding Officer, including fear that he may lose his career in the Navy.

Disputed. Plaintiff's deposition testimony establishes that Plaintiff suffered headaches, increased smoking and sleep loss that lasted less than 14 days or less. Plaintiff's purported expert is not a psychologist, not a doctor and has no medical training whatsoever. He does not have the proper expertise to issue such an opinion. Plaintiff's purported expert opinion is clearly incapable of testifying as to whether Mr. Bolton suffered any emotional distress, fear or anxiety. His testimony is irrelevant based upon rank speculation and should be ignored.

**B. Defendant's Statement of Undisputed Material Facts**[1]

1. Plaintiff admits that he owes a debt to Triad Financial of at least $4,700.

2. Plaintiff claims that his debt was a consumer debt.

3. After Plaintiff defaulted on his obligation to Triad, it was assigned to Pentagroup for collection.

4. Plaintiff alleges that the totality of Pentagroup's collection efforts were three telephone calls.

5. The first alleged contact occurred around November 2, 2007, when plaintiff received a message from one of Pentagroup's employees, Joyce Selepack.

6. Plaintiff described the tone of the first contact, the message left by Joyce Selepack, as

---

[1]Plaintiff did not file a response to Defendant's SUFs. They are taken to be true except to the extent that Plaintiff has provided contrary evidence as part of these cross motions.

"professional."

7.  On or around November 2, 2007, plaintiff returned Joyce Selepack's message.

8.  Although plaintiff alleges that a heated exchange took place during his conversation with Joyce Selepack, he acknowledges that no Pentagroup employee was profane.

9.  Plaintiff acknowledges that no Pentagroup employee called him names during his first conversation with Joyce Selepack.

10.  Plaintiff acknowledges that no Pentagroup employee insulted him in any way during his first conversation with Joyce Selepack.

11.  During plaintiff's initial telephone conversation with Pentagroup, he also spoke with Joyce Selepack's supervisor.

12.  Plaintiff alleges that the supervisor stated that she would send a "package" to his commanding officer related to the debt plaintiff immediately owed to Triad.

13.  Plaintiff acknowledges that the supervisor never cursed at him.

14.  Plaintiff acknowledges that the supervisor never called him names.

15.  Plaintiff acknowledges that the supervisor never insulted him.

16.  Plaintiff admits that Pentagroup did not contact his commanding officer with respect to his debt.

17. Pentagroup's final contact with the plaintiff was an alleged voice mail message which contained no profanity.

18. Pentagroup's final voice mail message to plaintiff contained no racial or ethnic epithets.

19. Pentagroup's final voice mail message to plaintiff did not threaten any physical harm on plaintiff.

20. Pentagroup's final voice mail message to plaintiff did not insult plaintiff in any way.

21. Plaintiff claims that the final alleged message from Pentagroup occurred on or about November 3, 2007.

22. By November 8, 2007, plaintiff had already contacted his attorney regarding filing suit against Pentagroup.

23. Plaintiff filed the instant action on February 12, 2008.

24. Plaintiff's Complaint alleged a single cause of action for violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692d, 1692e, and 1692f.

25. Defendant made a Rule 68 offer of judgment for $2,002, plus reasonable attorneys fees on May 2, 2008.

26. Plaintiff allowed the Rule 68 offer to expire on its own terms.

27. Plaintiff admits that his only actual damages suffered are alleged emotional distress damages.

28. Plaintiff admits that he has received calls from debt collectors, other than the defendant, attempting to collect debts.

29. Plaintiff claims that his emotional distress manifested itself in loss of sleep, fear and headaches.

30. Plaintiff claims that as a result of his emotional distress, he began smoking extra cigarettes.

31. Plaintiff acknowledges that within a couple of weeks, his smoking had subsided.

32. Plaintiff acknowledges that his sleeplessness lasted a week or less, and then his sleeping pattern returned to normal.

33. Plaintiff acknowledges that his fear that his commanding officer was going to be contacted lasted only a week.

34. Plaintiff admits that he never missed any work as a result of his emotional distress.

35. Plaintiff admits that he suffered no bodily harm.

36. Plaintiff admits that he never saw a doctor as a result of the contact with Pentagroup.

37. Plaintiff admits that he never saw any medical professional as a result of his alleged emotional distress.

38. Plaintiff admits that he never sought psychological treatment as a result of his alleged emotional distress.

1    39. Plaintiff admits that he never contacted any medical provider as a result of his alleged

2    emotional distress.

3

4    40. Plaintiff admits that he had no medicine prescribed.

5

6    41. Plaintiff admits that he has no documentation substantiating his emotional distress.

7

8    42. Plaintiff admits that the only evidence supporting his emotional distress is his own testimony

9    and that of his wife and friends.

10

11    **IV. Discussion**

12    **A. FDCPA Liability**[2]

13        Plaintiff alleges that the content of Defendant's contact with him over the phone violated

14    15 U.S.C. §§1692d, 1692e, and 1692f of FDCPA. "A debt collector may not engage in any

15    conduct the natural consequence of which is to harass, oppress, or abuse any person in

16    connection with the collection of a debt." 15 U.S.C. §1692d. "A debt collector may not use any

17    false, deceptive, or misleading representation or means in connection with the collection of any

18    debt....Without limiting the general application of the foregoing, the following conduct is a

19    violation of this section: (5) The threat to take any action that cannot legally be taken or that is

20    not intended to be taken." 15 U.S.C. §1692e. "A debt collector may not use unfair or

21    unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §1692f. "Except as

22    provided in section 804 [15 U.S.C. §1692b], without the prior consent of the consumer given

23    directly to the debt collector, or the express permission of a court of competent jurisdiction, or as

24    reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not

25    _____

26        [2]Subject matter jurisdiction must always be considered before the court entertains the
     case on its merits.  However, for purposes of discussion only, the court will flip the order as
27    certain substantive analyses of FDCPA damages are necessary to resolving the issue of mootness.

28

communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. §1692c.

"Before entering a discussion of the merits of those issues, it is helpful to trace a brief outline of the most salient features of the Fair Debt Collection Practices Act. The Act, consisting of 16 succinct sections, is based on Congress' findings that debt collection abuses are serious and widespread, and a finding by the National Commission on Consumer Finance, referred to in the legislative history, which showed that the 'vast majority of consumers who obtain credit fully intend to repay their debts.' S. Rep. No. 95-382, 95th Cong., 1st Sess. 3 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1697 (Legis. History). Congress explained that although unscrupulous collectors comprise only a small portion of the industry, the less ethical debt collectors threaten consumers with violence, use profane or obscene language, make telephone calls at unreasonable hours, impersonate public officials and lawyers, *disclose debtors' personal affairs to employers* and engage in other sorts of unscrupulous practices. Id. at 1696." Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2nd Cir. 1996), emphasis added. "[T]he FDCPA is a strict liability statute in that a plaintiff need not prove an error was intentional." Reichert v. Nat'l Credit Sys., 531 F.3d 1002, 1004 (9th Cir. 2008).

Plaintiff does not claim that the first voice mail message violated the FDCPA. In key part, Plaintiff alleges that during the phone conversation later that day, Ms. Hedgeman "told me that there was some military clause that my commanding officer should know that I have a debt, if it's prior military....And she told me that she was going to send a package to my commanding officer. And I asked her what kind of package she was going to send. She wouldn't tell me. I was like, 'Well, can you send that package to me first before you send it to my commanding officer so I can see it.' She says, 'You can see it when it gets to his desk,' and she hung up on me." Bolton Depostion, at 39:2-21. Plaintiff claims that Ms. Selepack left a second voice mail message in which she said, "maybe sending - contacting your commanding officer would be a better way to contact you." Doc. 21, Part 2, Bolton Deposition, at 41:22-24.

**1. Informing An Employer About Outstanding Debt**

The Ninth Circuit has stated "Under the least sophisticated debtor standard, we hold that Southern Oregon's threat to make a 'complete investigation concerning your employment' violates section 1692e(5). Because section 1692c(b) prohibits such unconsented and unauthorized communication with a debtor's employer concerning the debt, 15 U.S.C. §1692c(b), the threat constitutes a 'threat to take any action that cannot legally be taken.' 15 U.S.C. § 1692e(5)....Thus, Southern Oregon violated section 1692e(5), and summary judgment in its favor on that issue should not have been granted." Swanson v. Southern Or. Credit Serv., 869 F.2d 1222, 1227 (9th Cir. 1988). In that case, the Ninth Circuit reversed summary judgment granted in favor of the debt collector defendant. However, the court used strong language in a manner that suggests summary judgment should be granted in favor of the plaintiff. The Northern District of Illinois has cited Swanson in granting summary judgment for a debtor plaintiff: "The letter's threat to review Beasley's past and present employment is a bit more ambiguous: it is unclear whether defendants were warning Beasley that they would actually contact his present and former employers or defendants were merely stating their intention to document his employment information by contacting a legally acceptable third source. An unsophisticated consumer could reasonably interpret the warning as a threat to contact employers directly, which is contrary to law. Defendants' letter contains false representations in violation of § 1692e(5)." Beasley v. Collectors Training Inst., Inc., 1999 U.S. Dist. LEXIS 13275, *5 (N.D. Ill. Aug. 17, 1999); see also Raimondi v. McAllister & Assocs., 50 F. Supp. 2d 825, 827 (N.D. Ill. 1999).

In the cases cited above, the statements made were much more vague than in the case at hand. Defendant argues that threatening to send an "unidentified package" to the commanding officer does not necessarily mean informing that individual about the existence of Plaintiff's debt. Doc. 26, Defendant's Opposition, at 11:5-9. That argument ignores the fact that Plaintiff says Ms. Hedgeman told him it was a debt his commanding officer should know about. That combination constitutes a rather clear threat. Plaintiff also provides evidence that Ms. Selepack also threatened to contact his commanding officer in the second voice mail message. Defendant

1  has not disputed the content Plaintiff's deposition testimony. Defendant objects to the form in

2  which the evidence of the voice mail message was presented,[3] but not the substance of it.

3      Defendant tries to distinguish <u>Swanson</u> under the rationale that "the violation occurred

4  when the collector used the term 'complete investigation' and ***not*** the alleged threat to contact the

5  Plaintiff's employer on its own." Doc. 27, Part 1, Defendant's Reply, at 10:23-25, emphasis in

6  original. The court finds this interpretation of <u>Swanson</u> (the FDCPA violation was the threat of

7  investigation as opposed to threat of contact) to be wholly unreasonable. The Ninth Circuit

8  clearly expressed its understanding of "complete investigation" when it said, "Our threshold

9  question concerns our evaluation of the threat. Obviously, one reader might perceive the

10 communication as a threat to contact the reader's employer while another might not." <u>Swanson v.</u>

11 <u>Southern Or. Credit Serv.</u>, 869 F.2d 1222, 1226 (9th Cir. 1988). The court did state, "We

12 believe, however, that the least sophisticated debtor receiving the second notice would associate

13 the threat to undertake 'a complete investigation [of] your employment and assets' with an

14 embarrassing inquiry with his employer concerning the debt, concerning his performance as an

15 employee, and concerning his job security." <u>Swanson v. Southern Or. Credit Serv.</u>, 869 F.2d

16 1222, 1227-28 (9th Cir. 1988). Any of these three actions might violate the FDCPA

17 individually; the Ninth Circuit was clearly not stating that all three threats were required for an

18 FDCPA violation.

_____

21 [3]Defendant objected to a transcript of the second phone message as violating the hearsay and best evidence rule. Doc. 26, Part 5, Defendant's Evidentiary Objections. Plaintiff then filed an audio recording of the message with his reply. Doc. 28. Defendant objected that the evidence was untimely and still failed the best evidence rule. Doc. 29. While it is unfair to surprise a party with new evidence in reply, this is not a situation where that danger arises. Plaintiff simply submitted the exact same evidence in a new format in response to Defendant's objections regarding format. The court finds that the audio recording may be relied upon in ruling on this motion.

Defendant's other objections regarding a report from John Baker who purports to be an expert on the Uniform Code of Military Justice need not be addressed as the court does not rely on that material in ruling on these motions. It is established that Plaintiff was afraid revelation of the debt would adversely affect his military career. The specific procedures of military discipline for violating military rules are not relevant.

**14**

**2. Location Information**

Defendant argues that contact with the commanding officer was permitted under Section 1692b, which states "Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall (1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer; (2) not state that such consumer owes any debt; (3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information." Defendant cites to a Northern District of California case:

> Defendants respond that the repeated telephone calls were made to plaintiff Irma Sanchez's workplace at various times to confirm her location, verify her employment or alternatively, to have her return their calls. In collections industry parlance, defendants sought to obtain, inter alia, 'location information.' As plaintiff Irma Sanchez never returned any of their telephone calls or messages and the home telephone number was disconnected (or otherwise unpublished), defendants Client Services and Karla Davis continued to call the available workplace numbers. Until defendants were able to make contact with plaintiff Irma Sanchez defendants believed that their information was 'incomplete' within the meaning of the statute....Defendants' argument, however, that the repeated telephone calls made to plaintiff Irma Sanchez's workplace was based on incomplete location information creates a triable fact issue as to whether theirs, was a 'reasonable belief.'

Sanchez v. Client Servs., 520 F. Supp. 2d 1149, 1157 (N.D. Cal. 2007). However, this line of argument fails as Ms. Hedgeman raised the prospect of contacting Plaintiff's commanding officer while on the phone with Plaintiff himself. In Swanson, the Ninth Circuit was faced with the same argument: "The phrase 'complete investigation' connotes something more than simply obtaining permissible location information. If Southern Oregon merely meant to state that after 48 hours it would begin to seek permissible location information, the notice should have so stated." Swanson v. Southern Or. Credit Serv., 869 F.2d 1222, 1228 (9th Cir. 1988). "Defendant had called his home phone and left messages. Defendant had called his cell phone and spoke with the Plaintiff. Defendant knew where he worked, where he was stationed, and that he was a member of the armed services. Therefore, Defendant argument that it was threatening to contact

1    Plaintiff's Commanding Officer solely to obtain location information lacks merit and must fail."

2    Doc. 25, Plaintiff's Opposition, at 9:10-15.

3

4    **3. Bona Fide Error**

5    "A debt collector may not be held liable in any action brought under this title [FDCPA] if

6    the debt collector shows by a preponderance of evidence that the violation was not intentional

7    and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably

8    adapted to avoid any such error." 15 U.S.C. §1692k(c). "The language of section 1692k(c)

9    indicates that the bona fide error exception is an affirmative defense, for which [the debt

10   collector] has the burden of proof at trial." Fox v. Citicorp Credit Servs., 15 F.3d 1507, 1514 (9th

11   Cir. 1994). As part of its response to Plaintiff's Statement of Undisputed Material Facts,

12   Defendant included additional facts "relevant to its bona fide error defense." Doc. 26, Part 2,

13   Defendant's Response to SUFs, at 5:9-10. Defendant provides the declaration of an employee

14   who states that Ms. Selepack and Ms. Hedgeman have gone through training on FDCPA and "It

15   is my opinion that Pentagroup did not intend to violate the law with regard to collecting on

16   Plaintiff's debt." Doc. 26, Part 3, Sauer Declaration, at 2:15-3:2. However, there is no mention

17   of the bona fide error defense in the briefing. Defendant has not provided any case law applying

18   this defense nor explained how the defense applies in this case. Defendant has only provided the

19   declaration of one employee who makes general statements that the training provided conformed

20   with FDCPA. As previously stated, the court is not required to examine the entire file for

21   evidence establishing a genuine issue of material fact where the evidence is not set forth in the

22   opposing papers with adequate references. See Southern Cal. Gas Co. v. City of Santa Ana, 336

23   F.3d 885, 889 (9th Cir. 2003).

24   Clerical errors are a paradigmatic application of the defense. The Ninth Circuit has

25   determined that "Reliance on advice of counsel or a mistake about the law is insufficient by itself

26   to raise the bona fide error defense." Baker v. G. C. Services Corp., 677 F.2d 775, 779 (9th Cir.

27   1982). Defendant does not appear to be arguing mistake of law so much as adequate training. In

28   cases where an employee violated company policy, debt collector defendants have provided

**16**

1  detailed affidavits explaining how employees were trained on that specific policy. See, e.g.

2  Wilhelm v. Credico, Inc., 519 F.3d 416, 420 (8th Cir. 2008). Defendant has not provided

3  anything like that in this case; no evidence has been provided that Ms. Selepack and Ms.

4  Hedgeman were specifically trained to know that they could not inform a debtor's employer

5  about a debt. Further, this line of argument directly conflicts with Defendant's argument that Ms.

6  Selepack and Ms. Hedgeman properly threatened to contact the commanding officer to gather

7  location information. To simultaneously forward these two positions would likely involve

8  factual contradictions. In the absence of any briefing and with the scant amount of evidence

9  presented, Defendant has failed to meet its burden to defeat summary adjudication based on this

10 affirmative defense.

11

12 **B. Emotional Distress Damages**

13 "Except as otherwise provided by this section, any debt collector who fails to comply

14 with any provision of this title [FDCPA] with respect to any person is liable to such person in an

15 amount equal to the sum of- (1) any actual damage sustained by such person as a result of such

16 failure; (2) (A) in the case of any action by an individual, such additional damages as the court

17 may allow, but not exceeding $ 1,000...; and (3) in the case of any successful action to enforce

18 the foregoing liability, the costs of the action, together with a reasonable attorney's fee as

19 determined by the court. On a finding by the court that an action under this section was brought

20 in bad faith and for the purpose of harassment, the court may award to the defendant attorney's

21 fees reasonable in relation to the work expended and costs." 15 U.S.C. §1692k(a). How to

22 interpret the "actual damage" language with respect to emotional distress is an issue of lively

23 legal controversy. Some courts borrow state law on intentional infliction of emotional distress

24 ("IIED") while others consult the Fair Credit Reporting Act ("FCRA") which contains similar

25 language. The Ninth Circuit has not ruled on the issue and district courts within California have

26 come to opposite conclusions. See Panahiasl v. Gurney, 2007 U.S. Dist. LEXIS 17269 (N.D. Cal.

27 March 8, 2007) (following FCRA); Costa v. Nat'l Action Fin. Servs., 2007 U.S. Dist. LEXIS

28 93230 (E.D. Cal. Dec. 19, 2007) (applying California's IIED standard). Upon consideration, this

court concurs with Judge Damrell, who found that California IIED standards applied:

> Under the FDCPA and RFDCPA, plaintiff may recover in addition to statutory damages, actual damages, including damages for emotional distress, sustained as a result of defendant's conduct in violation of the statutes. 15 U.S.C. §1692k(a)(1); Cal. Civ. Code § 1788.17. Here, plaintiff does not claim any out-of-pocket losses or other actual damages, except damages for alleged emotional distress she sustained as a result of defendant's conduct.
>
> District courts are split over whether a plaintiff's claims for emotional distress damages under the FDCPA are evaluated under the state law governing the tort of IIED or some lower standard. Under the latter approach, courts have concluded that an FDCPA plaintiff does not need to meet state law standards for IIED in order to recover emotional distress damages for an FDCPA violation. Under this approach, courts instead have analogized the FDCPA to the Fair Credit Reporting Act ('FCRA'). Under the FCRA, a statutory scheme very similar to the FDCPA, a plaintiff who proves a violation of the Act is entitled to actual damages for emotional distress arising from the violation, without first having to prove a right of action under state law. Applying this rational, courts hold that when a violation of the FDCPA has been established, actual damages for emotional distress can be proven independently of state law requirements; a plaintiff need not prove state law tort elements to be compensated for their emotional distress. However, a plaintiff must demonstrate more than transitory symptoms of emotional distress and unsupported self-serving testimony by a plaintiff is not sufficient.
>
> Alternatively, other courts require a plaintiff to prove a claim for IIED under state law in order to collect damages for emotional distress. This court finds persuasive those cases requiring a plaintiff to establish the elements of a claim for IIED under state law in order to sustain a claim for emotional distress damages under the FDCPA and RFDCPA. First, Section 1692 et seq. contains no indication Congress intended to create a more lenient IIED standard in enacting the FDCPA. Moreover, the FDCPA expressly requires to recover above and beyond statutory damages, definable actual damages. 15 U.S.C. § 1692k(a)(1). There must be some standards to adjudge those damages, and the court finds that the standards for a state IIED claim serve that purpose well as they ensure that the alleged damages are real and quantifiable.

Costa v. Nat'l Action Fin. Servs., 2007 U.S. Dist. LEXIS 93230, *21-24 (E.D. Cal. Dec. 19, 2007), citations omitted.

"The elements of a cause of action for intentional infliction of emotional distress are (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and proximate causation of the emotional distress." Molko v. Holy Spirit Ass'n, 46 Cal. 3d 1092, 1120 (Cal. 1988), superseded on other grounds. "Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress

are factors to be considered in determining its severity. It appears, therefore, that in this context, 'severe' means substantial or enduring as distinguished from trivial or transitory. Severe emotional distress means, then, emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." <u>Fletcher v. Western National Life Ins. Co.</u>, 10 Cal. App. 3d 376, 397 (Cal. App. 4th Dist. 1970), citations omitted.

Plaintiff's emotional distress claim is founded on the anxiety he felt when thought his commanding officer might be told of his debt. Plaintiff states that he had headaches and sleeplessness that lasted about a week and felt rage for a couple of days. Bolton Deposition, at 54:16-55:6. Plaintiff took Motrin, an over the counter pain reliever. Bolton Deposition, at 55:12-20. Plaintiff did not contact any doctor or take any prescription drugs. Bolton Deposition, at 45:9-14. Here, Plaintiff's anxiety is similar to that of the plaintiffs in other debt collection cases in which the courts found no severe emotional distress as a matter of law. See <u>Girard v. Ball</u>, 125 Cal. App. 3d 772, 788 (Cal. App. 2d Dist. 1981) (sleeplessness, anxiety and nervousness for which plaintiff sought no medical treatment); <u>Costa v. Nat'l Action Fin. Servs.</u>, 2007 U.S. Dist. LEXIS 93230, *25 (E.D. Cal. Dec. 19, 2007) (sleeplessness, shaky hands, and anxiety for which plaintiff did not see any doctors). Plaintiff's discomfort of short duration does not constitute severe emotional suffering. As Plaintiff fails to meet that IIED element as a matter of law, the court need not address the other elements. Plaintiff may not recover emotional distress damages.

**C. Mootness**

Defendant also argues that Plaintiff's rejection of its settlement offer renders the case moot. Defendant provides the declaration of one of its attorneys, who states "On May 2, 2008, Pentagroup served on Plaintiff's counsel a rule 68 offer of judgment in the amount of $2002 plus reasonable attorney fees and costs." Doc. 15, Part 4, Turner Declaration, at 2:11-12. Defendant posits that since Plaintiff is not entitled to any emotional distress damages under California's IIED case law, he is limited to the statutory award of $1,000 per 15 U.S.C. §1692k(a)(2)(A).

In other FDCPA cases, rejection of settlement offers have resulted in a finding of

mootness:

> Tallon argues, however, that he also suffered emotional damages as a result of the 'blind garnishments.' His only evidence is an affidavit stating that the experience was 'extremely stressful, embarrassing, and humiliating for him' and that 'as a result of such embarrassment and humiliation he has been and remains anxious which has further resulted, from time to time, in a loss of sleep and appetite.' This Court has recently reviewed the evidence required to prove emotional damages under the FDCPA:
>
> > 'There is a strict standard for a finding of emotional damage "because they are so easy to manufacture." Sarver v. Experian Info. Solutions, 390 F.3d 969, 971 (7th Cir. 2004) (quoting Aiello v. Providian Fin. Corp., 239 F.3d 876, 880 (7th Cir. 2001)). When the injured party's own testimony is the only proof of emotional damages, he must explain the circumstances of his injury in reasonable detail and cannot simply rely on conclusory statements. Bach v. First Union Nat'l Bank, 149 Fed. Appx. 354, 361-62 (6th Cir. 2005) (citing Sarver, 390 F.3d at 971). Plaintiff must produce actual evidence of distress and injury, not merely conclusory statements about it.' Breed v. Nationwide Ins. Co., No. 05-547, 2007 U.S. Dist. LEXIS 30714, 2007 WL 1231558, at *3 (W.D. Ky. Apr. 24, 2007).
>
> Tallon's affidavit, standing alone, presents the very type of 'conclusory statements' that are deemed an insufficient basis to recover emotional damages under the FDCPA and this Court so finds. Therefore, Tallon's maximum recovery for 'actual damages' under section 1692k(a)(1) is fifty-five dollars. It follows that Tallon's maximum recovery under the statute in toto would be $1,055 plus costs and reasonable attorneys' fees....
>
> This Court has already determined that the offer of judgment satisfies all of Tallon's legally recognizable monetary interests. With these financial claims fully satisfied and Tallon's claims would seem to be moot. This Court agrees with the other district courts finding that in these circumstances, the satisfied claim can be dismissed as moot.

Tallon v. Lloyd & McDaniel, 497 F. Supp. 2d 847, 850-51 (W.D. Ky. 2007); see also Greisz v. Household Bank, N.A., 176 F.3d 1012, 1015 (7th Cir. 1999). However, Tallon must be distinguished. As stated in the opinion, the Sixth Circuit had set out binding case law on the subject of FDCPA emotional damages. At the time of the settlement offer, the plaintiff in Tallon knew or should have known that the offer matched or exceeded the maximum he was legally entitled to.

In this case, there is no binding precedent regarding FDCPA emotional distress damages. Federal district courts within California have come to opposite conclusions. It is clear that there is a vigorous legal debate in which both positions are reasonable interpretations of the law. Thus, the amount Plaintiff is legally entitled to receive in this case is not determined until this court makes a definitive ruling on the issue. The court's ruling today does not retroactively render the case moot. At the time the settlement offer was made, Plaintiff did not know if the offer was

more than his maximum legal recovery.

As part of its mootness argument, Defendant also says that even under the alternate standard (assuming FDCPA damages provision analogous to the FCRA), Plaintiff would not be entitled to emotional distress damages. The court finds some uncertainty over the quantum of evidence necessary under FCRA to substantiate emotional distress damages for temporary mental anguish. See <u>Wantz v. Experian Info. Solutions</u>, 386 F.3d 829, 834 (7th Cir. 2004) ("conclusory statements" of mental distress alone is insufficient evidence); <u>Panahiasl v. Gurney</u>, 2007 U.S. Dist. LEXIS 17269, *5-6 (N.D. Cal. March 8, 2007) ("Plaintiffs have submitted declarations attesting to their emotional distress. Plaintiff Jeannie Panahiasl was subjected to abusive debt collection practices, including repeated telephone abuse, and suffered emotional distress, including: embarrassment, fear, anger, panic, humiliation, nervousness, crying fits, difficulty eating and sleeping, and diarrhea. Sandy Pierson was subjected to repeated telephone abuse and suffered emotional distress in the form of embarrassment, humiliation, harassment, anger, anxiety, lack of concentration and stress. The Court hereby awards Jeannie Panahiasl $50,000, and Sandy Pierson $10,000, for emotional distress based on the declarations submitted"); <u>Cassady v. Union Adjustment Co.</u>, 2008 U.S. Dist. LEXIS 90700, *21 (N.D. Cal. Oct. 27, 2008) (emotional distress damages a jury question even though no evidence appears to have been submitted on that issue in summary judgment). In this case, Plaintiff was essentially offered $1,002 for emotional distress he suffered over a period of approximately two weeks. In an older case, a plaintiff was awarded $2,500 for suffering "loss of sleep, nervousness, frustration and mental anguish" for a period of about two months. <u>Millstone v. O'Hanlon Reports, Inc.</u>, 528 F.2d 829, 834 (8th Cir. 1976). Based on what has been presented, the court can not find as a matter of law that it would have been impossible for Plaintiff to have been entitled to more if the alternate standard applied. The past settlement offer does not render the case moot.

## IV. Conclusion

Plaintiff's motion for summary adjudication is GRANTED. Defendant's motion for summary judgment is GRANTED in part and DENIED in part. Defendant is liable to Plaintiff

for violation of 15 U.S.C. §1692e of the Fair Debt Collection Practices Act.  Plaintiff may not recover emotional distress damages.  Plaintiff's rejection of a settlement offer in the past does not render the case moot.

IT IS SO ORDERED.

**Dated:**   **March 16, 2009**           <u>**/s/ Anthony W. Ishii**</u>
CHIEF UNITED STATES DISTRICT JUDGE